# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 22, 2016 Session

## JOHN CHRISTOPHER GIBBS v. LISA STACY GIBBS

**Appeal from the Circuit Court for Claiborne County**
**No. 8-CV-97 James Cotton, Judge**
_____

**No. E2015-01362-COA-R3-CV-FILED-SEPTEMBER 7, 2016**
_____

This appeal involves a post-divorce civil contempt petition. Approximately three years after the parties' divorce, the former wife filed a petition in the trial court seeking to hold the former husband in civil contempt for willfully breaching provisions of their property settlement agreement that was incorporated into the divorce decree that required him to pay certain debts and transfer certain real and personal property to her. The husband did not attend the contempt hearing, and the trial court found that he willfully violated the divorce decree based on the wife's testimony. The trial court ordered that the husband be incarcerated and fined $50 per day until such time as he came into compliance with the divorce decree. On appeal, the husband argues that the trial court lacked the authority to enforce the property settlement agreement by contempt and that his failure to comply was not willful. We hold that contempt is a proper remedy for the breach of a property settlement agreement that has been incorporated into the divorce decree. Additionally, we hold that the evidence does not preponderate against the trial court's finding that the husband's failure to comply with the divorce decree was willful. We therefore affirm the judgment of the trial court as modified in this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Janette L. Taylor, Oneida, Tennessee, for the appellant, John Christopher Gibbs.

C. Patrick Sexton, Oneida, Tennessee, for the appellee, Lisa Stacy Gibbs.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

John Christopher Gibbs ("Husband") and Lisa Stacy Gibbs ("Wife") were divorced by final decree in December 2009. The divorce decree approved and incorporated a marital dissolution agreement prepared and signed by the parties. In pertinent part, the agreement included the following provisions related to division of the parties' property:

> 5. <u>VEHICLES.</u> Husband shall give to Wife the 100th Anniversary Harley Davidson motorcycle. The 1964 Corvette is awarded to Wife. The [Infiniti SUV] shall be vested solely in Wife and Husband shall be fully responsible for payment of the indebtedness due on said automobile. Husband shall also provide a down payment for a new vehicle and shall make payments on same.

> . . .

> 12. <u>REAL ESTATE.</u> Husband shall continue to pay the indebtedness on the residence located at 150 Glenstone Circle, Harrogate, Tennessee . . . .

> The current listed owner of the property and the mortgagee is Wife's mother, Mary Margaret Stacy. It is the intent of the parties that the owner and mortgagee shall be changed to John Christopher Gibbs and Lisa Stacy Gibbs. Husband shall pay the cost for preparation of documents necessary to complete the above-referenced transaction. When paid off Husband will deed to Wife.

> Husband shall transfer three lots situated in Brush Mountain Farms Development in Bell County, Kentucky. These lots will be listed in the following three names: Laura Whitney Gibbs, Leslie Brook Gibbs, and Lisa S. Gibbs. The deeds conveying said property shall be executed by Husband within 15 days of the date of this Agreement.

In July 2013, Wife filed a petition in the Claiborne County Circuit Court requesting that Husband be held in contempt for his willful failure to comply with those and other provisions of the marital dissolution agreement.[1] In the petition, Wife alleged that Husband

---

[1] Wife's petition also sought to have Husband held in contempt for his failure to comply with provisions of the marital dissolution agreement that required him to obtain life insurance and make certain monetary payments. The trial court reserved ruling on those issues pending further discovery, and they are not at issue in this appeal. *See Bailey v. Crum*, 183 S.W.3d 383, 387 (Tenn. 2005) ("[A] judgment of contempt

had not delivered title to the named vehicles or transferred possession of the Harley Davidson motorcycle and 1964 Corvette. She further alleged that Husband had not made mortgage payments on the real property located in Harrogate, Tennessee (the "Harrogate property") or transferred title to the lots located in Bell County, Kentucky (the "Kentucky property"). Wife also requested an award of attorney's fees incurred in prosecuting the contempt action.

Husband filed a response to Wife's contempt petition in which he maintained that his failure to comply with the marital dissolution agreement was not willful. Specifically, Husband asserted that the Harley Davidson motorcycle had been repossessed; that he had previously offered to deliver the 1964 Corvette and its parts to Wife; and that he was financially unable to continue making the payments on the Infiniti SUV. He further denied that the Harrogate property was in foreclosure but asserted that the Kentucky property had previously been transferred to the mortgage holder. Finally, he asserted that he was in the midst of Chapter 13 bankruptcy proceedings and requested that the contempt proceedings be continued until he was able to afford an attorney.[2]

The trial court held a hearing on Wife's contempt petition on May 28, 2014. Although the record submitted on appeal does not contain a transcript or statement of the evidence from the hearing, the trial court's order reflects that Husband was represented by an attorney at the hearing but did not personally attend or present evidence. Based on Wife's testimony, the court found that Husband "[has] the ability to comply with the divorce decree" and "has engaged in a pattern of delay, deception, obscuration, and calculating [sic] to defeat his obligations in the divorce decree." The court held Husband in civil contempt and ordered that he be incarcerated and fined $50 per day until such time as it determined that he was in full compliance with the following orders:

> (a) [Husband] shall present credible and reliable proof that all mortgage debt on the [Harrogate property] is current and up to date.
>
> (b) [Husband] shall execute (in the form of a Quit Claim Deed) and deliver to [Wife] a Deed conveying title to the [Kentucky property] free and clear of all liens, encumbrances, and debt.

---

becomes final upon entry of punishment and is, thus, appealable under [Tennessee Rules of Civil Procedure, Rule 3] even though the proceedings out of which the contempt arose are not complete.").

[2] It is unclear from the record when the bankruptcy proceedings referenced in Husband's response were dismissed. In her appellate brief, Wife states that the bankruptcy petition was dismissed on March 5, 2014. In any event, Husband has not asserted that he was still in bankruptcy at the time of the contempt hearing in May 28, 2014.

(c) [Husband] shall deliver to [Wife] an executed title vesting her as the sole owner of the 100th Anniversary Harley Davidson Motorcycle and further shall relinquish physical possession and control of said motorcycle free and clear of all liens, encumbrances, and debts to [Wife].

(d) [Husband] shall deliver [Wife] the most recent existing title, and instrument to the 1964 Chevrolet Corvette automobile, including the obligation to execute any document necessary to effectuate a transfer of title to [Wife], and [Husband] shall also deliver to [Wife] any and all parts to said Corvette including the body, engine, and otherwise to [Wife] from wherever they may be free and clear of all liens, encumbrances, and debt.

(e) [Husband] shall deliver to [Wife] a title to the [Infiniti SUV], executing any and all instruments necessary to vest [Wife] with sole and exclusive ownership of the [Infiniti SUV] free and clear of all liens, encumbrances, and debt.

On June 18, 2014, Husband filed a post-judgment motion to alter or amend or for new trial, in which he argued that his compliance with the trial court's order was impossible. Thereafter, on July 22, 2014, Husband once again filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Tennessee. On July 30, 2014, the trial court entered an order withdrawing its previously issued attachment for Husband's arrest and stating that the contempt proceedings would be held in abeyance pending the resolution of bankruptcy proceedings.

On May 14, 2015, Wife filed a motion requesting that Husband be ordered to show cause why he should not be incarcerated pursuant to the trial court's contempt order. Thereafter, Husband filed a response in which he, somewhat paradoxically, argued that further proceedings would violate the automatic stay imposed by his bankruptcy filing but requested that the trial court grant his post-judgment motion to set aside the contempt order. Husband argued that the trial court did not have the authority to enforce a property settlement by contempt because those provisions of the marital dissolution agreement retained their contractual nature despite being incorporated into the divorce decree.

On June 5, 2015, the trial court conducted a hearing on Wife's motion to show cause and Husband's post-judgment motion. Once again, Husband was represented by an attorney but did not personally attend the hearing. Through his attorney, Husband argued that the trial court erred in holding him in contempt for several reasons. First, Husband argued the automatic stay provision of the bankruptcy code prevented further action by the trial court while his bankruptcy petition was pending in federal court. *See* 11 U.S.C. § 362. He

- 4 -

asserted that, in light of his bankruptcy filing, Wife's recourse was to file a claim in the bankruptcy court. Next, Husband argued that, his bankruptcy filing notwithstanding, the parties' property settlement agreement retained its contractual nature after incorporation into the divorce decree and was therefore only enforceable by an action for breach of contract. Finally, Husband argued that the contempt order should be set aside because his compliance with the property settlement agreement was impossible. Husband submitted the affidavit of his divorce attorney stating that there was a mortgage on the Kentucky property at the time of the parties' divorce and a deed in lieu of foreclosure reflecting that the Kentucky property had been conveyed to the mortgage holder in 2013. He also submitted the affidavit of a storage facility owner stating that the 1964 Corvette's parts were located in a storage unit rented in Wife's name and that they were available for her to pick up at any time. Additionally, he submitted copies of his individual income tax returns for 2011 and 2012 reflecting that he had no income in those years. At the end of the hearing, the trial court rejected Husband's arguments and stated that it would not grant Husband relief from its contempt order until he appeared before it to testify on his own behalf. The trial court entered a written order denying Husband's post-judgment motion on June 25, 2015. Husband timely filed a notice of appeal.

### ISSUES

Husband presents the following issues on appeal, as we have restated them:

1. Whether the trial court lacked the authority to enforce property settlement provisions of a marital dissolution agreement by contempt.

2. Whether the trial court erred in holding Husband in civil contempt.

3. Whether the trial court erred by continuing to hold Husband in contempt after he had filed a Chapter 13 bankruptcy petition.

### STANDARD OF REVIEW

On appeal, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Turner v. Turner*, 473 S.W.3d 257, 269 (Tenn. 2015). When no transcript or statement of the evidence is included in the record on appeal, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct. *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). Nevertheless, no presumption of correctness attaches to the trial court's conclusions on issues of law. *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 382 (Tenn. 2015).

A court's decision to hold an individual in contempt is reviewed using an abuse of discretion standard. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). Under the abuse of discretion standard, the trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)). The abuse of discretion standard does not permit the appellate court to substitute its judgment for the judgment of the trial court. *Id.* Thus, a trial court's discretionary decision will be set aside on appeal only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Id.* (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

## THE TRIAL COURT'S CONTEMPT AUTHORITY

In Tennessee, the inherent power of the courts to punish conduct by contempt is limited by statute:

> [T]he inherent power of courts to punish contemptuous conduct has long been regarded as essential to the protection and existence of the courts. Indeed, at common law, the power of courts to punish contempts was vast and undefined. Because unlimited, undefined discretionary power carried with it the potential for abuse, specific statutory provisions were adopted to limit and define the conduct punishable by contempt.

*Black v. Blount*, 938 S.W.2d 394, 397 (Tenn. 1996) (citations omitted). Conduct punishable by contempt is set forth in Tennessee Code Annotated section 29-9-102, which provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> . . .
>
> (3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts[.]

Tenn. Code Ann. § 29-9-102(3) (2012).

In this case, Wife filed a petition requesting that Husband be held in contempt for his failure to comply with the property settlement provisions of the parties' marital dissolution agreement. When the parties divorced in 2009, the trial court approved the marital

dissolution agreement and incorporated it by reference into its divorce decree. Nevertheless, Husband argues that the trial court lacked the authority to enforce the agreement's property settlement provisions by contempt.

Tennessee courts have long encouraged divorcing parties to resolve their disputes and order their affairs by agreement. *See, e.g.*, *Hoyt v. Hoyt*, 372 S.W.2d 300, 304 (Tenn. 1963) ("[B]ona fide agreements relating to alimony or the adjustment of property rights between husband and wife, though in contemplation of divorce or separation . . . are valid."). Likewise, our statutes permit and encourage divorcing parties to resolve by agreement their disputes regarding child custody and visitation,[3] child support,[4] spousal support,[5] and the distribution of marital property.[6] These agreements are contracts between the parties and are therefore generally subject to the rules governing contracts. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001). As Tennessee courts have also recognized, however, "[a] divorce action is really a triangular proceeding where in addition to the parties the State through the court is a quasi party." *Anderson v. Anderson*, 810 S.W.2d 153, 155 (Tenn. Ct. App. 1991) (quoting *Osborne v. Osborne*, 197 S.W.2d 234, 236 (Tenn. Ct. App. 1946)). In its role as a "quasi party" to divorce proceedings, the court must examine each marital dissolution agreement and make an independent determination that it is equitable and legally sufficient. *Long v. McAllister-Long*, 221 S.W.3d 1, 8 (Tenn. Ct. App. 2006); *see also* Tenn. Code Ann. § 36-4-103(b) (2014) ("No divorce shall be granted on the ground of irreconcilable differences unless the court affirmatively finds in its decree that the parties have made adequate and sufficient provision by written agreement . . . ."). If the court finds the marital dissolution agreement to be equitable and sufficient, it may incorporate the agreement into its divorce decree. *See Ahern v. Ahern*, 15 S.W.3d 73, 81 (Tenn. 2000) (citing Tenn. Code Ann. § 34-4-103).

The characterization of a marital dissolution agreement as both a contract between divorcing parties and as a part of the court's decree creates something of a legal anomaly. On one hand, courts have continuing statutory authority to modify certain provisions of a marital dissolution agreement related to child support and alimony when justified by changed circumstances. *See* Tenn. Code Ann. § 36-5-101(a)(1) (providing for the modification of child support for minor children); Tenn. Code Ann. § 36-5-121(a) (providing for the

---

[3] Tenn. Code Ann. § 36-6-404.

[4] Tenn. Code Ann. § 36-5-101(j).

[5] Tenn. Code Ann. § 36-5-121(n).

[6] Tenn. Code Ann. § 36-4-121(g)(1).

modification of certain alimony awards).  On the other hand, subsequent modification of an agreement that retains its contractual nature would violate the Tennessee Constitution's prohibition against the impairment of contractual obligations.  *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975) (citing Tenn. Const. art. I, § 18).

In order to reconcile those competing interests, the Tennessee Supreme Court articulated the merger doctrine in *Penland v. Penland*, 521 S.W.2d 222 (Tenn. 1975). *Penland* involved a marital dissolution agreement in which the husband agreed to pay all educational expenses for the children beyond the high school level.  *Id*. at 223.  After the husband failed to pay any of the college expenses incurred by the parties' daughter, the wife filed a petition seeking to enforce the agreement.  *Id*.  The trial court ruled that the husband had no legal obligation to support the child after age 18 and granted summary judgment in his favor.  *Id*.  The Tennessee Supreme Court reversed.  *Id*. at 225.  In doing so, the court explained that when a marital dissolution agreement is incorporated into a divorce decree, only certain provisions of the agreement "merge" into a divorce decree and lose their contractual nature:

> The authority of the courts to order child support and, if necessary, to enforce same by the process of contempt, is statutory, and generally exists only during minority.  When the husband and wife contract with respect to the legal duty of child support, upon approval of that contract, the agreement of the parties becomes merged into the decree and loses its contractual nature.
>
> [T]he reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify.  It follows, and we so hold, that only that portion of a property settlement agreement between husband and wife dealing with the legal duty of child support, or alimony over which the court has continuing statutory power to modify, loses its contractual nature when merged into a decree for divorce.

*Id*. at 224 (citations omitted).  The court concluded that despite being incorporated into the divorce decree, the provision requiring the husband to pay college expenses was "a contractual obligation outside the scope of the legal duty of support during minority" and therefore not subject to modification by the courts.  *Id*. at 224-25.

Relying on *Penland*, Husband contends that because the property distribution provisions of the marital dissolution agreement at issue in this case retained their contractual nature, they must be enforced by suing for a breach of contract rather than by an action for contempt.  As Husband correctly asserts, a provision related to the distribution of marital

property does not lose its contractual nature by merger into the divorce decree and is therefore not subject to modification by the courts. *Towner v. Towner*, 858 S.W.2d 888, 892 (Tenn. 1993). That such a provision may not be modified by the court, however, does not negate the court's power to enforce it by contempt.

In *Hannahan v. Hannahan*, this Court affirmed a trial court's adjudication of contempt for noncompliance with a provision related to the distribution of marital property after expressly recognizing that the provision was not subject to modification by the court. 247 S.W.3d 625 (Tenn. Ct. App. 2007). In that case, the divorce decree incorporated the parties' marital dissolution agreement, which provided that they would own the former marital residence as tenants-in-common. *Id*. at 626. The parties later signed an agreed order modifying the agreement to provide that the husband would transfer his interest in the property to the wife. *Id*. Thereafter, the wife filed a petition for contempt alleging that the husband failed to do so. *Id*. at 626-27. The trial court held the husband in contempt, and he appealed. *Id*. On appeal, the husband argued that the modification was void because the trial court lacked the power to modify provisions related to the distribution of marital property. *Id*. at 627. This Court rejected his argument and upheld the modification, holding that while the provision retained its contractual nature and was not subject to later modification by the trial court, it was still subject to later modification by the parties. *Id*. More importantly as it relates to this case, however, we affirmed the trial court's decision to enforce the modified provision by contempt. *Id*. at 627. In doing so, we implicitly recognized that a court may enforce the provisions of an incorporated marital dissolution agreement by contempt regardless of whether the provision "merged" with the divorce decree. Moreover, in *Long v. McAllister-Long*, this Court expressly stated that provisions not merged into a divorce decree may be enforced by either contempt or a breach of contract action:

> The judicial remedies for breach of a provision in a marital dissolution agreement depend on whether the provision has merged into the divorce decree and thereby remains in the court's control. Contempt is the proper remedy for the breach of provisions that remain in the court's control.[7] Both contempt and breach of contract are proper remedies for the breach of provisions that have been approved and incorporated but not merged into the final decree.[8]

---

[7] "Basic child support for minor children and long-term alimony are examples of provisions that remain in the court's control and are subject to modification." *Long*, 221 S.W.3d at 9 n.9.

[8] "These provisions include alimony in solido awards, provisions involving the disposition of the marital estate, and agreements for child support in excess of the support required by law." *Long*, 221 S.W.3d at 10 n.10.

221 S.W.3d at 9-10.  Other Tennessee cases have also upheld the enforcement of property settlement agreements by contempt.  *See, e.g.*, *Holifield v. Holifield*, No. W2012-00806-COA-R3-CV, 2014 WL 527641 (Tenn. Ct. App. Feb. 10, 2014) (affirming contempt for defendant's failure to pay half of a health savings account to wife as a division of property); *Clarkson v. Clarkson*, No. M2006-02239-COA-R3-CV, 2007 WL 3072772 (Tenn. Ct. App. Oct. 22, 2007) (affirming contempt for defendant's failure to pay wife her share of retirement benefits).  As such, we conclude that contempt was an appropriate method of enforcing the property settlement provisions of the parties' marital dissolution agreement.

## THE TRIAL COURT'S ADJUDICATION OF CONTEMPT

Having determined that contempt was an appropriate method of enforcing the property settlement agreement, we must now determine whether the trial court erred in holding Husband in contempt.  A contempt based on alleged disobedience of a court's order has four essential elements:

> (1) the order alleged to have been violated must be "lawful"; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and (4) the violation of the order must have been "willful."

*Lovelace v. Copely*, 418 S.W.3d 1, 34 (Tenn. 2013).  Once a court determines that a person has willfully violated a lawful and sufficiently clear order, it may, in its discretion, hold the person in contempt.  *Konvalinka*, 249 S.W.3d at 358.  If the contempt consists of an omission to perform an act that the person still has the ability to perform, the court may imprison the individual to compel performance of the court order.  Tenn. Code Ann. § 29-9-104(a).  This is typically referred to as "civil contempt."  With civil contempt, the individual held in contempt has the "keys to the jail" and can purge the contempt by complying with the court's order.[9]  *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000).  Although coercive fines for civil contempt are rare, the individual can also "be separately fined, as authorized by law, for each day [he or she] is in contempt until [he or she] performs the act or pays the damages ordered by the court."  Tenn. Code Ann. § 29-9-104(b); *see also Bryan v. Leach*, 85 S.W.3d 136, 161 (Tenn. Ct. App. 2001) (upholding a fine for each day of ongoing contempt despite being "unable to find any authority in Tennessee regarding coercive fines imposed in civil

---

[9] Contempt may also be criminal in nature.  Criminal contempt is intended "to preserve the power and vindicate the dignity and authority of the law."  *Black*, 938 S.W.2d at 398.  Sanctions for criminal contempt are punitive and unconditional.  *Id*.

contempt"). This Court has interpreted the phrase, "as authorized by law," to permit coercive fines of up to $50 per day for civil contempt. *Bryan*, 85 S.W.3d at 161.

Here, the order at issue is lawful, and there is no dispute regarding the clarity of the order or whether Husband failed to comply with it. The only issue before us is whether Husband's noncompliance was "willful." For purposes of a civil contempt proceeding, acting contrary to a known duty may constitute willfulness. *Konvalinka*, 249 S.W.3d at 357. Stated another way, an individual acts willfully when the individual is aware of his or her duty to comply with the order and has the ability to do so at the time of the contempt hearing. *Ahern*, 15 S.W.3d at 79. Determining whether an individual has acted willfully in the violation of a court order is a factual issue uniquely within the province of the trial judge who can view the witnesses and assess their credibility. *Konvalinka*, 249 S.W.3d at 357. We therefore presume that the trial court's findings as to willfulness are correct unless the evidence preponderates otherwise. *Lovelace*, 418 S.W.3d at 34.

Regarding Husband's ability to comply with the divorce decree, the trial court found:

Whereas it is the finding that [Husband] is highly educated and an intelligent individual who is well aware and understands the obligations of the divorce decree . . . . [T]he Court finds in making the following contempt sanctions that [Husband] had and continues to have the ability to comply with the divorce decree regarding matters found in contempt below.

. . .

Whereas, the Court finds that [Husband] has engaged in a pattern of delay, deception, obscuration, and calculating [sic] to defeat his obligations in the divorce decree regarding property issues below.

[Husband] has engaged in gamesmanship and orchestrated arrangements making it difficult or impossible for [Wife] to realize her rightful property rights from the divorce decree even after years of knowing.

The trial court found that Husband was aware of his obligations under the divorce decree and had the ability to comply with them at the time of the contempt hearing. While Husband maintains that he did not, and does not, have the ability to comply with the court's order, the burden is on the party charged with civil contempt to demonstrate that he does not have the ability to comply. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006). There is no transcript or statement of the evidence from the contempt hearing in the record on appeal. In the absence of an adequate record on

appeal, we must presume that the trial court's ruling was supported by sufficient evidence. *See In re M.L.D.*, 182 S.W.3d at 894. Furthermore, the trial court's contempt order reflects that Husband was represented by counsel at the contempt hearing but did not present any evidence to demonstrate his inability to comply with the divorce decree. While Husband did attempt to demonstrate his inability to comply through evidence submitted with his post-judgment motion, the record contains no explanation of why he was unable to present that evidence at the contempt proceeding. As the post-judgment motion was essentially an attempt to relitigate the matter, we find no error in the trial court's decision to deny it. *See Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001) ("[Post-judgment motions] should not, however, be granted if they are simply seeking to relitigate matters that have already been adjudicated.").

Husband failed to participate in the trial court proceedings in any meaningful way. Despite having notice, Husband declined to attend both the trial court hearings on Wife's contempt petition and his own post-judgment motion. At the post-judgment motion hearing, the trial court stated that while Husband has a right not to appear at the court's proceedings, he cannot expect to prevail without offering testimony or cooperating in discovery. The trial court expressed that it would consider evidence of Husband's inability to comply with the divorce decree if he would appear before it to testify on his own behalf. The trial court's reasoning is sound. Based on the record before us, it appears that Husband has avoided compliance with his obligations under the divorce decree for years without repercussion. In light of Husband's persistent refusal to appear before the trial court and offer testimony in his own behalf, we see no reason to grant him relief from the court's orders. We therefore affirm the trial court's order holding Husband in civil contempt.

Although we affirm the trial court's contempt order, we do so with one modification. In the order, the trial court ordered that Husband be held in contempt until he complied with the divorce decree by, among other things, "deliver[ing] to [Wife] a Deed conveying title to the [Kentucky property] free and clear of all liens, encumbrances, and debt." That requirement in the contempt order, however, does not accurately reflect its counterpart in the parties' marital dissolution agreement. In pertinent part, Paragraph 12 of the agreement, titled "REAL ESTATE," provides that "Husband shall transfer three lots [comprising the Kentucky property]. These lots will be listed in the following three names: Laura Whitney Gibbs, Leslie Brooke Gibbs and Lisa S. Gibbs." Accordingly, we modify the trial court's order to provide that Husband deliver to Laura Whitney Gibbs, Leslie Brooke Gibbs, and Lisa S. Gibbs a deed conveying title to the Kentucky property.

## THE EFFECT OF HUSBAND'S BANKRUPTCY PETITION

Finally, we address what effect, if any, the filing of Husband's Chapter 13 bankruptcy petition had on the contempt proceedings. Section 362 of the United States Bankruptcy Code provides that the filing of a bankruptcy petition generally operates as a stay of all proceedings against the debtor and the debtor's property during the pendency of the bankruptcy case. *See* 11 U.S.C. § 362. Husband contends that after he filed a Chapter 13 bankruptcy petition on July 22, 2014, the trial court lacked the authority to continue holding him in contempt and require his incarceration. He submits that Wife's only recourse against him at that point was though the bankruptcy court. These arguments are without merit. A stay of state court proceedings against a bankruptcy debtor operates only as a suspension of the proceedings and does not divest a state court of jurisdiction over the case or bar the action. *In re James*, 940 F.2d 46, 51 (6th Cir. 1991) (citing *Hill v. Harding*, U.S. 631, 633 (1883)). The trial court's contempt order was entered on June 26, 2014. Husband did not file his bankruptcy petition until July 22, 2014. While the bankruptcy petition's filing suspended the contempt proceedings, it did not have any effect on the trial court's previous adjudication of contempt. Moreover, nothing in the record indicates that Husband was incarcerated or otherwise punished for contempt in any way during the pendency of the bankruptcy proceedings. In fact, the trial court withdrew attachment for Husband's arrest and held the case in abeyance after the bankruptcy petition was filed. At oral argument, Husband's attorney informed this Court that the bankruptcy petition had been dismissed. As such, the automatic stay has expired and has no effect on the trial court's contempt order or this appeal.

## CONCLUSION

As modified, the order of the trial court is affirmed. This case is remanded for such further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to the appellant, John Christopher Gibbs, and his surety, for which execution may issue if necessary

_____
ARNOLD B. GOLDIN, JUDGE

- 13 -